UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**FIDELITY DEPOSIT COMPANY
OF MARYLAND,**

    **Plaintiff,**

  v.

**Case No. 2:21-cv-4384
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Chelsey M. Vascura**

**AMAAZZ CONSTRUCTION GROUP, LLC,**
*f/k/a* **Amaazz Group LLC.,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter arises on Plaintiff Fidelity and Deposit Company of Maryland's ("F&D") Motion for Show Cause and Contempt for Violation of Permanent Injunction (the "Motion to Show Cause") (ECF No. 59) and Defendant Amaazz Construction Group, LLC's ("ACG") Motion to Consolidate (ECF No. 25); (*see also* ECF No. 7, *Amaazz Construction Group, LLC, v. CMI Roadbuilding, Inc.*, No. 21-cv-3644-EAS-CMV ("*CMI Roadbuilding*")). For the reasons stated herein, the Court (1) **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** F&D's Motion to Show Cause and (2) **DENIES** ACG's Motion to Consolidate.

### I. Background

This case starts and ends with various construction-related indemnity agreements and an injunctive order that this Court has already issued. The following facts are of particular relevance:

1

### A. The Indemnity Agreements

Dr. John A. Johnson and Suguneswaran Suguness are both members of a now-defunct construction contracting company, ACG. (*See, e.g.*, Pl.'s Ex. 1, ECF No. 32-1.) In August 2018, F&D issued several million dollars' worth of surety bonds to ACG in relation to various construction contracts that ACG procured. Part of that bond issuance required Dr. Johnson, Mr. Suguness, and their spouses (respectively, Latha Johnson and Susheel Suguness) (collectively, the "Amaazz Indemnitors") to execute an indemnity agreement (the "First Agreement"). (*See* Pl.'s Ex. 1, ECF No. 32-1.) Therein, all parties jointly and severally pledged, among other things, to indemnify F&D for "any and all liability and Loss" that it "sustained or incurred" from any (1) "Bond," (2) "Claim," (3) "indemnitor failing to timely and completely perform or comply with [the] Agreement," (4) action taken by F&D to enforce the Agreement, or (5) "any act of F&D" to protect itself, preserve its interests, and avoid or lessen its liability. (*Id.* at ¶ 2.) The Amaazz Indemnitors also vowed to (1) "promptly deposit with [F&D], on demand, an amount of money that [F&D] determines is sufficient to fund any liability or Loss" it incurred and (2) "pledge, assign, transfer and set over to [F&D] . . . collateral to secure [their] obligations" under the Agreement. (*Id.* at ¶¶ 4-5.)

Simultaneously, the Amaazz Indemnitors executed a second, identical indemnity agreement with F&D (the "Second Agreement"). (Pl.'s Ex. 3, ECF No. 32-1.) Joining them as indemnitors were two companies affiliated with Mr. Suguness: Defendants SMC Construction Southeast, LLC, and SMC Construction Group, LLC (collectively, "SMC"). (*Id.*) Later, in August 2019 and June 2020, two other Suguness-affiliated entities—Amaazz Construction Ohio, LLC, ("ACO") and The Knoch Corporation ("Knoch")—joined as indemnitors to F&D. (Pl.'s Ex.'s 2, 4, ECF Nos. 32-1.)

By the Summer of 2021, ACO defaulted on several of its "bonded" construction projects. This, in turn, exposed F&D to a contractually defined "Loss" of at least $176,553.43. In July 2021, and later in August 2021, F&D notified the Amaazz Indemnitors, ACO, Knoch, and SMC (collectively, the "Indemnitors") of this "Loss." (Pl.'s Ex.'s 5 & 6, ECF No. 32-2.) Pointing to the above agreements, F&D demanded all of the Indemnitors to, among other things, "(a) procure the full and complete discharge of F&D from all Bonds and all liability in connection with the Bonds or (b) promptly deposit collateral totaling $12,500,000 with F&D." (Pl.'s Ex. 6, ECF No. 32-2.)

### B. F&D Files Suit; ACG Moves to Consolidate

Ultimately, F&D's demands went unmet. So, in September 2021, it filed suit against the Indemnitors in this Court. (Compl., ECF No. 1.) At that point, ACG had already brought suit in this Court against another company for selling it defective construction equipment—an event which ACG claims led it to default on various construction projects. (*See* ECF No. 1, *CMI Roadbuilding*). Once F&D filed the case *sub judice*, ACG moved to consolidate these two cases. (ECF No. 25); (ECF No. 7, *CMI Roadbuilding*).

### C. The Court Enters an Agreed Preliminary Injunction Order

In November 2021, F&D moved for a preliminary injunction which, pursuant to the First and Second Agreements, required the Indemnitors "to deposit $12,500,000 in cash collateral." (ECF No. 32.) In December 2021, the parties engaged in a mediation before a Magistrate Judge of this Court. (ECF No. 39.) Ultimately, they resolved to have the Indemnitors deposit $7,784,248 in collateral with F&D. Promptly after that, this Court entered an Agreed Order which, among other things, required the Indemnitors to "wire $1,000,000 to F&D on or before Friday, December 21, 2021." (ECF No. 42.) This Court also commanded the following:

    a. Amaazz Construction Group, Amaazz Construction Ohio, John A. Johnson, Suguneswaran S. Suguness, Latha Johnson, and Susheela Suguness (*i.e.*, the

3

      Defendants other than Knoch, SMC Group, and SMC Construction) shall (i) apply (collectively or individually) in good faith for an irrevocable and perpetual letter of credit naming F&D as the beneficiary at least three separate banks on or before December 10, 2021 and (ii) contemporaneously furnish copies of such applications and related documents to F&D; and

    b. The [Indemnitors'] liability shall be discharged in relation to F&D's Motion for Preliminary Injunction conditioned upon (i) F&D's receipt of $1,000,000 from the Defendants on or before Friday, December 10, 2021 as contemplated by Section (a) and (ii) F&D's receipt of additional collateral in the amount of $6,784,248 in any combination of money and/or an irrevocable and perpetual letter of credit naming F&D as the beneficiary on or before Friday, January 14, 2022.

(*Id.*)

### D. The Court Orders Specific Performance

Several months later, on April 12, 2022, this Court entered an Agreed Permanent Injunction (the "Permanent Injunction") which specifically compelled the Indemnitors to perform their "duty to deposit collateral" with F&D. (ECF No. 56.) Therein, the Court acknowledged that:

> [s]ince the entry of the Agreed Order Relating to Motion for Preliminary Injunction, (a) only $1,000,000 in cash collateral has been deposited with F&D, (b) certain of the [Indemnitors] claim that they attempted in good faith obtain letters of credit to fund the balance of the collateral as required by the Agreed Order Relating to Motion for Preliminary Injunction, which such efforts by [Indemnitors] proved unsuccessful, (c) the Parties have participated in an additional settlement conferences before the Honorable Chelsey M. Vascura, and (d) the Parties have been unable to reach an agreement that would fully resolve F&D's Motion for Preliminary Injunction.

(*Id.* at ¶ 5.)

Directly after this acknowledgment, the Court permanently enjoined the Indemnitors to

> specifically perform their contractual obligation to deposit additional collateral in the amount of $6,784,248 with F&D as required by the Indemnity Agreements within thirty (30) days of the entry of this Permanent Injunction Compelling Specific Performance of Duty to Deposit Collateral and shall be subject to civil contempt to the extent they fail to take all reasonable steps within their power to comply with this Permanent Injunction Compelling Specific Performance of Duty to Deposit Collateral.

(*Id.* at ¶ 6.)

### E. **F&D Moves for a Show Cause/Civil Contempt Order**

By May 26, 2022, the Indemnitors had yet to deposit $6,784,248 in "additional collateral" with F&D. Citing this failure, F&D moved this Court that day to enter an order which:

> (1) compel[s] the Indemnitors to show cause for their violation of the [Permanent] Injunction, (2) find[s] some or all of the Indemnitors to be in civil contempt to the extent that are unable to prove that they are financially incapable of complying with and/or have taken all reasonable steps within their power to comply with the [Permanent] Injunction, and (3) impose[s] both coercive and compensatory sanctions upon the Indemnitors to motivating them to comply with the [Permanent] Injunction.[1]

(ECF No. 59.)

## II. F&D's Motion to Show Cause

To date, F&D notes it has only received $521,700.35 (or "less than 8%") of the $6,784,248 in "additional collateral" that this Court ordered it to be paid. (ECF No. 67 at PageID #1087.) $59,826.84 of that amount appears to have come from SMC. (ECF No. 59-1.) The remainder appears to have been split by the Sugunesses and the Johnsons, with the former group contributing $317,061.18, and the latter group contributing $144,812.33. (ECF No. 67 at PageID #1091.)

F&D sees no discernable excuse for this shortfall. It observes, for one, that at least one of the Indemnitors—Dr. Johnson—possesses a net worth of roughly $145 million, clearly putting him in the position to satisfy his collateral obligation. F&D notes further that the Sugunesses and the Johnsons have "retained or otherwise spent . . . more than 50%" of the "liquid assets" they have obtained since the Permanent Injunction was issued, rather than depositing them with F&D.

---

[1] F&D does not "focus or target" its motion on any non-Amaazz-related Indemnitor (*i.e.*, SMC or Knoch). (*See* SMC Resp., ECF No. 62.) And insofar as this Court can tell, at least one of those defendants—SMC—has made extensive efforts to comply with the Permanent Injunction. (*See id.*) (noting that SMC has wired F&D a total of $1,059,826.84, and that it would like have more to contribute were it not for the other indemnitors' efforts to "stall[]" the sale of SMC's office building). Accordingly, the Court cabins its focus to the Amazz Indemnitors.

To that extent, F&D argues that the Amaazz Indemnitors have "willfully disobeyed" the Permanent Injunction, leaving this Court no other choice but to hold them in contempt.

Dr. Johnson, for his part, "admit[s]" he "has [a] significant net worth," but notes that much of this value is "illiquid," and therefore cannot be accessed for purposes of satisfying the Permanent Injunction. (ECF No. 66 at PageID #970.) In the same breath, he acknowledges that "various entities" controlled by him and his wife own a sizeable degree of real estate assets that *could* be liquidated to satisfy the Permanent Injunction. (*See id.* at PageID #971.) But because neither he nor his wife technically own those assets, he argues that their respective "creditors"—or "any party asserting claims against the Johnsons in their individual capacities," such as F&D—"do not have any recourse" to force their liquidation. (*Id.* at PageID #971.) That point aside, Dr. Johnson concedes he "*may* decide to strategically have his companies divest certain properties, the proceeds of which would be paid to the Plaintiff." (*Id.* at PageID #973) (emphasis added). He claims he cannot do so now, however, as a "forced and sudden fire-sale could have detrimental effects on the ability of certain of [his] companies . . . to continue their operations." (*Id.*)

The Sugunesses are slightly more forthcoming. They note, specifically, that they "have liquidated all of their investment accounts"—their "only available liquid asset"—and that, of the $429,651 in net proceeds received, a majority ($317,061.18) was deposited with F&D. (ECF No. 66 at PageID #970.) The Sugunesses also observe that, at this point, it is "unclear" whether one or both of them will need to file for bankruptcy, given various lawsuits brought by the "creditors" of Mr. Suguness' numerous defunct businesses. (*Id.* at PageID #969-70.)

The Permanent Injunction commanded the Amaazz Indemnitors to "take all reasonable steps within their power to comply" with its terms. (ECF No. 59.) The Court, simply put, is not convinced that has occurred. Candidly, much of its skepticism is directed toward Dr. Johnson,

who, by his own admission, has a wealth of personal assets that could be used to satisfy his collateral obligation. (*See* ECF No. 59-2.) Such includes his "retirement accounts," "real property," and—as F&D strenuously points out—his "ownership interests" in the variety of companies he runs. *See S. Elec. Retirement Fund v. Gibson*, No. 3:04-0022, 2006 WL 2503625, at *5 (M.D. Tenn. Aug. 28, 2006) (finding that defendants failed to "carry their burden of production to show a present inability to comply with the Court's Order," particularly given their ownership of a then-for-sale commercial building, as well their "personal assets," which included "retirement funds and real property"). The Sugunesses, too, appear to hold assets that could be used to satisfy this Court's injunctive order. (*See* Pl.'s Reply, ECF No. 67 at PageID #1091) (noting that the Sugunesses have "only wired $317,061.18" of their $429,651 in "liquid assets" to F&D).

None of these individuals has offered actual, colorable evidence which demonstrates that he or she is "reasonably" incapable of using these assets to satisfy the Permanent Injunction. At most, they have set forth vague points as to why doing so would be burdensome or detrimental to their business interests. That is far from enough. *See S. Elec. Retirement Fund*, 2006 WL 2503625, at *4 (noting that, once a plaintiff meets his or her *prima facie* burden to demonstrate with "clear and convincing evidence" that a violation of an injunction has occurred, the defendant "may defend" their violation "by coming forward with evidence showing that [they are] presently *unable* to comply with the court's order") (citing *Elec. Workers Pension Tr. Fund of Local Union #58 v. Gary's Elec. Serv.*, 340 F.3d 373, 378 (6th Cir. 2003) (emphasis added)).

F&D, in other words, has successfully shown with "clear and convincing evidence" that the Amaazz Indemnitors are in violation of the Permanent Injunction. *See id.* The Amaazz Indemnitors have not carried their reciprocal burden to rebut that notion. *See id.* So, at this point—five months after this Court entered the Permanent Injunction—a finding of contempt may well be

7

warranted. And the Court would certainly be within its right to hold as much now. *See Gary's Elec. Serv.*, 340 F.3d at 378 ("A decision on a contempt petition is within the sound discretion of the trial court and thus is reviewed only for an abuse of discretion.").

Mindful of how "serious" contempt is, the Court will refrain for the time being. *Gascho v. Glob. Fitness Holdings*, 875 F.3d 795, 800 (6th Cir. 2017). Instead, it will provide the Amaazz Indemnitors one final chance to either (1) conform to the Permanent Injunction or (2) provide a bona fide, evidence-backed reason as to why *each* of them is individually "unable"—rather than merely *unwilling*—to use their personal assets to satisfy this Court's Order. To the extent they fail to do either (or otherwise unnecessarily delay or obfuscate this process), additional sanctions may be imposed.

Accordingly, the Court **ORDERS** as follows:

1. The Amaazz Indemnitors shall, **WITHIN TWENTY (21) DAYS** of the date of this Order, **SHOW CAUSE** as to why they should not be held in civil contempt.
2. A contempt hearing for the Amaazz Indemnitors shall be set for **Tuesday, November 8, 2022,** at **10:30 A.M.** Notice to follow.
3. The Court **HOLDS IN ABEYANCE** the remainder of F&D's Motion to Show Cause until after the above hearing concludes.

### III. ACG's Motion to Consolidate

As noted, ACG has moved to consolidate this case with another currently pending before this Court. (*See* ECF No. 25); (*CMI Roadbuilding*, ECF No. 7.) But as far as this Court can tell, no further action will be necessary in this case once the Indemnitors satisfy their joint obligation under the Permanent Injunction.[2] That means there is little point to consolidation. Accordingly, ACG's Motion to Consolidate is **DENIED**.

---

[2] To the extent F&D believes otherwise, it shall advise the Court on or before the hearing date noted above.

8

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **HOLDS IN ABEYANCE IN PART** F&D's Motion for Show Cause and Contempt for Violation of Permanent Injunction (ECF No. 59) and **DENIES** ACG's Motion to Consolidate. (ECF No. 25); (*CMI Roadbuilding*, No. 21-cv-3644-EAS-CMV, ECF No. 7.) A contempt hearing for the Amaazz Indemnitors shall be set in this case for November 8, 2021, at 10:30 A.M. A formal notice of the hearing will be issued promptly.

This case shall remain open.

**IT IS SO ORDERED.**

**9/21/2022**                                               <u>s/Edmund A. Sargus, Jr.</u>
**DATE**                                                   **EDMUND A. SARGUS, JR.**
                                                           **UNITED STATES DISTRICT JUDGE**